UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-21892-CIV-GOLD/MCALILEY

UNDERWRITERS AT LLOYDS
Subscribing to Cover Note MC-1151,

      Plaintiff,

vs.

FEDEX TRUCKLOAD BROKERAGE,
INC., *et al.*

      Defendants.

_____/

## OMNIBUS ORDER ON VARIOUS MOTIONS FOR SUMMARY JUDGMENT

**I.    Introduction**

      THIS CAUSE is before the Court upon various motions for summary judgment. *See* **[DE 48]**; **[DE 50]**; **[DE 63]**; **[DE 64]**; **[DE 65]**; **[DE 69]**; **[DE 77]**; **[DE 78]**. Responses and replies were timely filed, and oral argument was held on June 14, 2010. I have jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). Having considered the relevant submissions, the arguments of the parties, the applicable law, and being otherwise duly advised, I grant the motions in part and deny the motions in part for the reasons that follow.

**II.    Undisputed Material Facts**[1]

---

      [1] In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed facts. *See* S.D. Fla. L.R. 7.5. If necessary, the non-moving party may respond with a concise statement of material facts as to which it is contended that there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's statement which are supported by evidence in the record are deemed admitted unless controverted by the non-moving party. *Id.*

Plaintiff Lloyd's initiated this action on behalf a syndicate of underwriters that paid First International Computer of America ("FICA") $168,592 for cargo shipped by FICA that was stolen while en route to Miami. **[DE 1]**; *see also* **[DE 8]**. Defendants FedEx Truckload Brokerage ("FedEx"), B2B Transportation Services, Inc. ("B2B"), Central Oregon Truck Company ("COTC"), F*M Auto Transport, Inc. ("FM"), and Juan Gaban are alleged to be brokers or carriers that played a role in arranging and carrying the shipment that was ultimately stolen. **[DE 1]**. On July 7, 2009, Plaintiff filed the operative complaint, asserting claims against all Defendants for violations of the Carmack Amendment,[2] breach of bailment obligations, "tort claims," and breach of contract. **[DE 1]**.[3] All Defendants answered with the exception of Juan Gaban and FM, and a clerk's default was entered as to the non-answering Defendants on September 14, 2009. *See* **[DE 31]**. In addition to filing its answer, FedEx asserted cross-claims against B2B and COTC for breach of contract and contractual indemnity on July 28, 2009. **[DE 12]**. A cross-claim was also filed by B2B against Defendant FM **[DE 38]**, however, FM did not respond and a default was subsequently entered as to B2B's cross-claim. **[DE 45]**.

Currently before the Court are the following motions: Plaintiff's Motion for Partial Summary Judgment **[DE 69]**, FedEx's Cross-Motion for Summary Judgment as to Plaintiff's Claims **[DE 78]**, B2B's Cross-Motion for Summary Judgment as to Plaintiff's Claims **[DE 48]**, COTC's Cross-Motion for Summary Judgment as to Plaintiff's Claims **[DE**

---

[2] 49 U.S.C. § 14706.

[3] Plaintiff has since withdrawn its Carmack Amendment and bailment claims against FedEx. *See* **[DE 105, p. 2 n. 2]**.

2

**64]**, B2B's Motion for Summary Judgment as to FedEx's Cross-Claims Against B2B **[DE 50]**, FedEx's Cross-Motion for Summary Judgment as to its Cross-Claims Against B2B **[DE 65]**, COTC's Motion for Summary Judgment as to FedEx's Cross-Claims Against COTC **[DE 63]**, and FedEx's Cross-Motion for Summary Judgment as to its Cross-Claims Against COTC **[DE 77]**.

The undisputed facts giving rise to the claims at issue are as follows: On July 15, 2008, a cargo of 840 desktop computers were provided by FICA to driver Juan Gaban at FICA's Fremont, California Facility to be shipped to Miami, Florida.  **[DE 68, ¶ 1]**.[4]  The bill of lading provided to FICA in connection with this shipment listed COTC as the "carrier" and was signed by Juan Gaban in his capacity as "carrier/driver" **[DE 67-7]**.  In the bill of lading, Gaban "acknowledge[d] receipt of [840 units of computer equipment]" in "good order."  *Id.*  While en route to Miami, the cargo was stolen. **[DE 68, ¶ 2]**.  As a result of the theft, Plaintiff paid FICA $168,592.00 as compensation for its loss.  **[DE 68, ¶ 4]**.

Although the specific role played by each Defendant with respect to the cargo at issue is far from settled, there are a number of signed agreements purporting to govern each parties' rights and liabilities.   The first is a "Freight Brokerage Contract and Authorization" entered into by FICA and FedEx on July 15, 2008.  **[DE 78]**; **[DE 67-7]** ("the

---

[4] The only Defendant to contest this fact is COTC.  However, COTC failed to cite any record evidence in support of its conclusory statement that this fact is contested. *See* **[DE 98]**.  Because COTC "has offered no evidence, other than [its] own conclusory allegations, to rebut this evidence . . . these statements are insufficient to create a genuine issue of material fact . . ." *McCarley v. KPMG Int'l,* 293 Fed. App'x. 719, 722 (11th Cir. 2003) (citation omitted); *see also* **[DE 67-7]**; *Banana Servs., Inc. v. M/V Tasman Star,* 68 F.3d 418, 420 (11th Cir. 1995) (noting that a "clean bill of lading creates a rebuttable presumption the goods were delivered to the carrier in good condition").

FICA Brokerage Contract"). The FICA Brokerage Contract, which states that it "is the sole governing document with respect to the brokerage of the [cargo at issue]," provides, *inter alia*, that "FedEx . . . is not liable for any loss or damage to cargo" and that "all claims for non-delivery, late delivery, loss and/or damage must be made directly with the actual transporting carrier." **[DE 67-7]**.

The second pertinent agreement for purposes of this Order is a Transportation Brokerage Broker-Carrier Agreement ("Broker-Carrier Agreement") purportedly entered into by FedEx, as broker, and "B2B/COTC," as carrier, on January 16, 2007.[5] **[DE 67-1]**. This agreement – which was purportedly executed by an employee of B2B without authority to do so, **[DE 48-5]**; note 7, *infra* – provides that the "carrier shall assume all risk of loss and liability in the transportation of any goods for Broker from the time of Carrier's receipt of such goods from Broker or Broker's customer until proper delivery of the same has been made." **[DE 67-1]**. The Broker-Carrier Agreement also provides that "all liability standards and burdens of proof will be governed by the common law applicable to common carriers and . . . the provisions of 49 U.S.C. § 14706 (the Carmack Amendment)." *Id.*

The third pertinent agreement is a Freight Brokerage Contract and Authorization ("the B2B Brokerage Contract") allegedly entered into by B2B[6] and FedEx on July 15, 2008, that lists both COTC and B2B as a carrier, and identifies Earl Homes as COTC's

---

[5] The contract provides that it shall remain in effect until terminated by either party. Neither party contends that it was terminated.

[6] COTC's name is printed on the first page of the contract under "Carrier," but B2B's name appears in the signature block on the "Carrier Name" line.

contact.[7] **[DE 67-5]**.   The B2B Brokerage Contract provides, in pertinent part, that it is "subject to the terms of the [Broker-Carrier Agreement] previously executed between us and this constitutes an addendum to the [Broker-Carrier] Agreement." *Id.*  Keeping these facts in mind, I now turn to the legal arguments raised in the motions at issue.

## III.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials[8] show that, drawing all inferences in favor of the nonmovant,  there is no genuine issue as to any material fact and summary judgment is proper as a matter of law.  Fed. R. Civ. P. 56(c).  The court must determine the relevant set of facts and draw all inferences in favor of the opposing party "to the extent supportable by the record." *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007).  The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. *Id.* at 380 (quoting Fed. R. Civ. P. 56(c)).  A genuine dispute requires more than "some

---

[7] Mr. Holmes is a former employee of B2B whose signature appears on the face of the Broker-Carrier Agreement and the B2B Brokerage Contract.  **[DE 119-1, pp. 8, 13]**.  While he worked at B2B, he had a working relationship with COTC and was the only person loading their vans at one point during his tenure with B2B.  **[DE 119-1, pp. 4, 6-7]**.  B2B's President has submitted an affidavit declaring that Mr. Holmes had no authority to bind B2B or COTC to the January 2007 Transportation Brokerage Broker-Carrier Brokerage agreement or the July 15, 2008 Freight Brokerage Contract and Authorization.  **[DE 48-5]**.

[8] The supporting materials must be properly authenticated, and "[u]nsworn documents generally cannot support a summary judgment motion." *Withrow v. Miller*, 348 Fed. App'x. 946, 947 (5th Cir. 2009) (citing *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985)); *Burnett v. Stagner Hotel Courts, Inc.*, 821 F. Supp. 678, 683 (N.D. Ga. 1993) ("In order for a document to be considered in support of, or in opposition to, a motion for summary judgment, it must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").

metaphysical doubt as to the material facts." *Id.* at 380 (citation and internal quotation marks omitted).  In other words, a "mere scintilla" of evidence is insufficient; the non-moving party must produce "substantial evidence" in order to defeat a motion for summary judgment. *Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004). Furthermore, summary judgment is appropriate even if "some alleged factual dispute" between the parties remains, so long as there is "no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotes and citation omitted).

The party that is "seeking summary judgment must demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  The moving party bears the initial burden of informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citations omitted).  Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986).

The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004).  In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are [fact-finding] functions, not those of a judge." *Anderson*, 477 U.S. at 255.  However, where no reasonable [fact-finder] could find in the non-moving party's favor, summary judgment is appropriate.  *Stewart v. Happy Herman's Cheshire Bridge*, *Inc.,* 117 F.3d 1278, 1287 (11th Cir. 1997).

## IV.    Analysis

### A.    *Plaintiff's Motion for Partial Summary Judgment*

The first motion I consider is Plaintiff's Motion for Partial Summary Judgment "against Defendants," which "submits that one issue – prima facie case – is ripe for summary adjudication." **[DE 69, pp. 1-2]**.  Curiously, Plaintiff does not contend that it is entitled to partial summary judgment regarding liability.  Instead, it requests a declaration stating "that it has proven its *prima facie* case, leaving for trial the respective liability of the defendants and awarding of prejudgment interest." *Id.* at 4.

Federal Rule of Civil Procedure 56(a) provides that a party claiming relief, or a party against whom relief is sought, "may move . . . for summary judgment on all or part of the claim."  Thus, pursuant to Rule 56, a party may move for final summary judgment as to a claim, or partial summary judgment as to a "part of a claim," such as liability.  *See* Fed. R. Civ. P. 56(d)(2) ("noting that summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages").  However, Plaintiff has not cited any authority – and this Court is unaware of any – stating that a Court may provide a declaration as to the establishment of a Plaintiff's *prima facie* case.[9]  Accordingly, to the

---

[9] Plaintiff's counsel conceded at oral argument that it could not find a single case where a district court provided a declaration via summary judgment order that a plaintiff had proven a *prima facie* case. **[MSJ Hr'g Tr., 5:13 p.m. - 5:15 p.m., June 14, 2010]**.

extent Plaintiff's Motion for Partial Summary Judgment requests such a declaration, the motion is denied.  To the extent that Plaintiff simply seeks to establish certain undisputed material facts, *see* Fed. R. Civ. P. 56(d)(1), I conclude that the following material facts have been established by competent evidence and are not currently at issue: (1) that the computers at issue were shipped by FICA and were delivered to Juan Gaban in Fremont, CA in good order, *see* **[DE 67-7]**; *Banana Servs.,* 68 F.3d at 420 (noting that a "clean bill of lading creates a rebuttable presumption the goods were delivered to the carrier in good condition");[10] (2) that the computers were stolen en route to Miami, **[DE 68 at ¶ 2]**; (3) that the computers had a value of $153,720.00**,** *id.* at ¶ 3; and (4) that Plaintiff paid FICA $168,592 for its loss.  *Id.* at ¶ 4.

> **B.**    *FedEx's Cross-Motion for Summary Judgment as to Plaintiff's Claims*

Next, I address FedEx's Cross-Motion for Summary Judgment as to Plaintiff's Claims **[DE 78]**, which asserts that FedEx is entitled to judgment as a matter of law with respect to all counts of Plaintiff's complaint.  Because Plaintiff has withdrawn its Carmack Amendment and bailment claims as to Defendant FedEx, *see* **[DE 105, p. 2 n. 2]**, I need only address Plaintiff's third and fourth causes of action for negligence and breach of contract.

> **1.**    <u>Negligence Claim</u>

FedEx argues that Plaintiff's negligence claim is barred by Florida's economic loss

---

[10] *See* note 4, *supra*.

rule.[11]  Under Florida law, the contractual economic loss rule[12] bars parties in contractual

privity from asserting tort claims to recover solely economic damages where the tortfeasor

has not committed a breach of duty separate from what is covered by a valid contract.  *See*

*Indemnity Ins. Co.*, 891 So. 2d at 536.  This "prohibition against tort actions to recover

solely economic damages for those in contractual privity is designed to prevent parties to

a contract from circumventing the allocation of losses set forth in the contract by bringing

an action for economic loss in tort."  *Indem. Ins. Co.*, 891 So. 2d at 536.

In opposition to FedEx's economic loss argument, Plaintiff asserts that "it is not

Here, it is undisputed that FICA and FedEx were parties to the FICA Brokerage

Contract, which provides that it "is the sole governing document with respect to the

brokerage of the [cargo at issue]." **[DE 67-7]**.  Thus, FedEx and FICA's rights and

obligations are limited to those contemplated by their agreement, and cannot be

"circumvent[ed]" by bringing a claim sounding in tort.  *Indem. Ins. Co.*, 891 So. 2d at 536;

*Detwiler v. Bank of Cent. Fla.*, 736 So. 2d 757, 759 (5th DCA 1999) ("[T]he economic loss

rule limits the plaintiff to pursuing her rights in contract").

In opposition to FedEx's economic loss argument, Plaintiff asserts that "it is not

appropriate at this stage to determine that plaintiff's claims lie solely in tort or contract." **[DE**

**105, p. 14]**.  This argument is without merit, as Florida courts have uniformly held that

whether a particular claim is barred by the economic loss rule is a question of law that may

---

[11] Both Plaintiff and FedEx agree that Florida law applies to Plaintiff's claims against FedEx.  **[DE 105, p. 14]**; **[DE 78, p. 16]**; *see also* **[MSJ Hr'g Tr., 5:29 p.m. - 5:31 p.m.]**.

[12] There is also a products liability economic loss rule that is inapplicable here. *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 537-38 (Fla. 2004).

be appropriately determined at the dismissal or summary judgment stage.  *See, e.g.,*
*Taylor v. Maness*, 941 So. 2d 559 (3d DCA 2006); *Detwiler*, 736 So. 2d at 759 (affirming
dismissal of fiduciary duty claim based on economic loss rule).

In sum, the rights and obligations of Plaintiff and FedEx with respect to the cargo
at issue are set forth in the FICA Brokerage Contract.  The economic loss rule does not
permit parties to circumvent a binding and valid contract, and Plaintiff's tort claims against
FedEx therefore fail as a matter of law.[13]

### 2. Breach of Contract Claim

FedEx also argues that it is entitled to judgment as a matter of law on Plaintiff's
breach of contract claim because Plaintiff has failed to allege a breach of any contractual
term. **[DE 78, p. 17]**.  At oral argument, counsel for Plaintiff and FedEx agreed that the
FICA Brokerage Contract constitutes a valid contract between FedEx and FICA "for the
provision of brokerage services by FedEx."  **[MSJ Hr'g Tr., 5:21 p.m. - 5:22 p.m.]**.
However, neither party was able to clarify exactly what the contract requires of FedEx, and
on its face, the contract does not appear to impose *any* obligations upon FedEx.  Instead,
the contract simply states that it is a "Freight Brokerage Contract & Authorization."[14] FedEx
argues that by virtue of its title, the FICA Brokerage Contract "required [it] to . . . see that
the shipment was transferred from the shipper to the destination" and nothing more. **[MSJ**
**Hr'g Tr., 5:21 p.m. - 5:22 p.m.]**.  Plaintiff, on the other hand, argues that because the

---

[13] Plaintiff's counsel conceded at oral argument that its negligence claim against
FedEx is barred by the economic loss rule.  **[MSJ Hr'g Tr., 5:16 p.m. - 5:17 p.m.]**.

[14] It also contains a number of other provisions, none of which appear to impose
any obligations on FedEx.

contract fails to specify the FedEx's duties with respect to the brokered shipment, it is latently ambiguous, and the Court must consider extrinsic evidence in order to "ascertain, insofar as possible, the intent of the parties" and *then* determine whether FedEx breached the agreement.[15] *Centennial Mortg., Inc. v. SG/SC, Ltd.,* 772 So. 2d 564, 565 (concluding that, where an "option contract did not address topic of renovation-cost overruns . . . parol evidence was admissible to assist trial court in determining what the parties would have included in the contract had they anticipated the possibility of cost overruns").  Having reviewed the FICA Brokerage Contract, I agree with Plaintiff that it is latently ambiguous, as it is completely silent regarding FedEx's brokerage obligations – obligations that FedEx concedes exist.  Because the existence of a latent ambiguity prevents me from interpreting the FICA Brokerage Contract as a matter of law, FedEx's motion for summary judgment on Plaintiff's breach of contract claim must be denied.  *Barrington v. Gryphon Inv., Inc.*, 32 So. 3d 668, 671 (Fla. 2d. DCA 2010) ("When an agreement contains a latent ambiguity, . . . the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment.") (cites and quotes omitted).[16]

---

[15] Plaintiff claims that FedEx breached its implied contractual obligation to "get[] a carrier that has insurance."  **[MSJ Hr'g Tr., 5:20 p.m.]**.

[16] Because FedEx's obligations under the FICA Brokerage Contract are ambiguous, so are the exculpatory clauses contained therein, for when faced with such a contract, an "ordinary and knowledgeable party will [not] know what he is contracting away"; as such, these clauses are unenforceable.  *Southworth & McGill, P.A. v. Southern Bell Tel. and Tel. Co.*, 580 So. 2d 628, 634 (Fla. 1st DCA 1991) (noting that under Florida law, exculpatory clauses "are not favored . . . [and] are enforceable only where . . . an ordinary and knowledgeable party will know what he is contracting away.")

C.    B2B's Motion for Summary Judgment on Plaintiff's Claims

     1.    Carmack Amendment Claim

B2B contends that it is entitled to summary judgment on Plaintiff's Carmack Amendment claim because the Carmack Amendment applies only to "carriers" and not to "brokers."  B2B asserts that because it acted as a "co-broker" and was not authorized to act as a "carrier," it cannot be held liable pursuant to the Carmack Amendment.  **[DE 48, p. 5]**.  Plaintiff does not dispute that B2B lacked authorization to act as a carrier, but claims that it agreed to – and did – act as a carrier with respect to shipments brokered by FedEx, including the shipment at issue. **[DE 70, pp. 1-4 at ¶ ¶ 2, 7, 11]**.

Pursuant to 49 U.S.C. § 13102(3), "[t]he term 'carrier' means a motor carrier, a water carrier, and a freight forwarder."  The term "motor carrier," in turn, is defined as "a person providing motor vehicle transportation[17] for compensation." 49 U.S.C. § 13102(14). While it is undisputed that B2B was not *authorized* to act as a motor carrier, there is clearly a genuine issue of material fact as to whether B2B *actually* acted as a carrier.[18]  *See, e.g.,* **[DE 49-1, p. 13]** ("Q: And despite the fact that another trucker was [to] be used as far as FedEx was concerned, [COTC] and B2B were the carriers for this load? A: Yes.").

--------------------

[17] *See* 49 U.S.C. § § 13102(16), 13102(23) (defining "motor vehicle" and "transportation").

[18] I reject B2B's suggestion that the Carmack Amendment ceases to apply when a party acts as a "carrier" as defined in 49 U.S.C. § 13102 without appropriate authorization to do so.  *See Delta Research Corp. v. EMS, Inc.,* 2005 WL 2090890, *1, *5 (E.D. Mich. Aug. 29, 2005) ("[t]he fact that [defendant] is not a regulated interstate motor carrier is not dispositive of the issue of liability under the Carmack Amendment"); *Ensco, Inc. v. Weicker Transfer and Storage Co.*, 689 F.2d 921, 925 (10th Cir. 1982) ("A carrier's status as a common carrier is determined not by reference to its authority . . . .").

Accordingly, B2B's motion for summary judgment on Plaintiff's Carmack Amendment claim must be denied. *Phoenix Assur. Co. v. K-Mart Corp.*, 977 F. Supp. 319, 325 (D.N.J. 1997) (concluding that whether truck service company was carrier or broker involved questions of fact precluding summary judgment in subrogation action by shipper's insurer, even though truck service company was registered as a broker and was not authorized to act as a carrier); *see also Neb. Turkey Growers Co-Op Ass'n v. ATS Logistics Servs., Inc.*, 2005 WL 3118008, *1, *4 (D. Neb. 2005) (noting that "[t]he difference between a carrier and a broker is often blurry [and] [t]he crucial distinction is whether the party legally binds itself to transport, in which case it is considered a carrier") (citation omitted).

      2.    <u>Bailment Claim</u>

B2B also claims that it is entitled to summary judgment on Plaintiff's bailment claim because the undisputed evidence establishes that B2B never took possession of the cargo. Under Florida law,[19] a bailment is "a contractual relationship among parties in which the subject matter of the relationship is delivered temporarily to and accepted by one other than the owner." *S&W Air Vac Sys., Inc., v. Fla. Dep't of Revenue*, 697 So. 2d 1313, 1315 (5th DCA 1997) (citation omitted). "Among the chief features of bailments is the degree to which possession, custody and control of the subject matter is surrendered by the bailor to the bailee." *Id.* Thus, it has been stated that:

> [A] full delivery of the subject matter must be made to the bailee as will entitle him to exclude for the time of the bailment the possession of the owner and all other persons, give the bailee an independent and temporarily exclusive possession of the property, or sole custody and control, result in an actual

---

[19] B2B and Plaintiff agree that Florida law governs Plaintiff's bailment claim against B2B. **[MSJ Hr'g Tr., 5:40 p.m.]**.

change of legal as well as physical possession of the property from the bailor to the bailee, make him liable to the owner as the sole custodian of the property in the event of his neglect or fault in discharging his trust with respect to the subject matter, and require a redelivery of it by him to the owner or other person entitled to receive it after the trusts of the bailment have been discharged.

*Id.* (quoting 8 C.J.S. Bailments § 23(b) (1988)).

In the instant case, Plaintiff has not presented any evidence to rebut the affidavit submitted by B2B's President stating that "[a]t no time did B2B . . . have possession of the cargo in question." **[DE 48-5]**. Instead, Plaintiff simply refers to a provision of the January 2007 Broker-Carrier Agreement – an agreement executed more than a year before the shipment at issue was loaded – in which "B2B/COTC" agreed to "have exclusive control and direction of the equipment and vehicles in the performance of Services pursuant to [the Broker-Carrier] Agreement." **[DE 71, p. 14]**; **[DE 67-1, § 1(b)]**. Because this contractual provision, without more, is insufficient to create a triable issue regarding actual or constructive delivery of *the cargo at issue* to B2B, B2B's motion for summary judgment will be granted as to Plaintiff's bailment claim.[20]   *See Meeks ex rel. Estate of Meeks v. Fla. Power & Light Co.*, 816 So. 2d 1125, 1129 (noting that "bailment generally requires delivery by the bailor and acceptance by the bailee") (citations omitted); *see also Ice Fern Shipping Co., Ltd. v. Golten Service Co., Inc.,* 2005 WL 3692840, *1, *2 (S.D. Fla. 2005) (concluding that bailment claim failed as a matter of law where plaintiff failed to demonstrate that cargo was placed in defendant's exclusive possession).

---

[20] Curiously, B2B did not seek summary judgment on Plaintiff's Carmack Amendment claim based on lack of delivery.  *See* **[DE 48, p. 5]**.

14

3.    Negligence Claim

B2B also contends that it is entitled to summary judgment on Count III of Plaintiff's Complaint because "Plaintiff has not alleged any duty owed by B2B" and B2B did not agree to carry the shipment.  **[DE 48]**.  Plaintiff responds that summary judgment is not appropriate on the negligence claim, because even if B2B is ultimately found *not* to be a carrier for purposes of the Carmack Amendment – which would pre-empt any state law tort claims, *see Hewlett-Packard Co. v. Bros. Trucking Enter., Inc.,* 373 F. Supp. 2d 1349, 1351-52 (S.D. Fla. 2005) – B2B could still be liable for wrongful conduct under state law as a broker.  I agree.  As the *Hewlett Packard* Court correctly noted, a freight broker defendant can be held liable for its negligent conduct in the event that the Carmack Amendment is found not to apply.  *Id.*  ("In the event the fact-finder finds that the Carmack Amendment does not apply to Defendant, Defendant may be held liable for the alleged negligent conduct").  As such, it remains for the fact-finder to determine whether B2B violated its common law duties as a freight broker, assuming it is ultimately absolved of carrier liability under the Carmack Amendment.

4.    Breach of Contract Claim

_____As for Count IV, I agree with B2B that Plaintiff's claim fails for want of a contract. To prevail on a breach of contract claim, a plaintiff must establish the existence of the following elements: "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008) (citations omitted). Here, Plaintiff has failed to identify the existence of a contract between FICA and B2B, while B2B has submitted a sworn affidavit stating that no such contract existed. **[DE 48-5**

**at ¶ 8]** ("At no time did B2B Transportation Services, Inc. have any oral or written contracts with [FICA]").  Because Plaintiff has failed to create a genuine issue of material fact regarding the existence of a contract between FICA and B2B, summary judgment will be granted on this claim.

     *D.    COTC's Motion for Summary Judgment on Plaintiff's Claims*

     Defendant COTC moves for summary judgment on Plaintiff's first two claims – i.e., Carmack Amendment and bailment – on the grounds that Plaintiff "cannot establish the . . . delivery of the shipment to COTC in good condition."  **[DE 64, p. 4]**.  While it is true that Plaintiff has not conclusively established delivery to COTC, it is not Plaintiff's burden to do so at this stage.  Instead, it is COTC's burden to demonstrate that Plaintiff has failed to create a genuine issue of material fact as to delivery.  It has not, nor can it, for Plaintiff has submitted ample evidence to create a triable issue regarding delivery, including, but not limited to, a clean bill of leading listing COTC as "carrier."  **[DE 67-7]**; *Banana Servs.,* 68 F.3d at 420 (noting that a "clean bill of lading creates a rebuttable presumption the goods were delivered to the carrier in good condition").

     As for Plaintiff's third claim (i.e., negligence), COTC's duty argument fails for the same reasons as B2B's; that is, COTC could still be found liable for wrongful conduct under state tort law – e.g., negligently hiring FM to carry the load, *see* **[DE 48, p. 3 at ¶ 3]**; **[DE 70, p. 6 at ¶ ¶ 31-32, 37]**  – even if it is absolved of carrier liability under the Carmack Amendment.  *See Suarez v. Gonzalez*, 820 So. 2d 342, 347 (Fla. 4th DCA 2002) (holding that a defendant can be held liable for negligently hiring an independent contractor if it "is negligent in selecting, instructing, or supervising the contractor")  (citation and internal

quotation marks omitted). Accordingly, COTC's motion must be denied in its entirety.[21]

      *E.*      *B2B's Motion for Summary Judgment on FedEx's Cross-Claims and FedEx's Cross-Motion for Summary Judgment*

In addition to moving for summary judgment on Plaintiff's claims, B2B has also submitted a statement of facts and two-page memorandum of law requesting summary judgment on FedEx's breach of contract cross-claims. **[DE 50]**. As noted, FedEx's first cross-claim alleges a breach of the January 2007 Broker-Carrier Agreement signed by B2B employee Earl Holmes, while its second cross-claim alleges a breach of the July 2008 B2B Brokerage Contract, which was also executed by Mr. Holmes. B2B argues that it is entitled to summary judgment on FedEx's contract claims because: (1) "there is no entity known as B2B/Central Oregon Truck";[22] and (2) Mr. Holmes was without the actual authority to enter into the contracts on behalf of B2B. **[DE 50, p. 6]**. Even taking these facts as true, B2B is not entitled to judgment as a matter of law on FedEx's cross-claims because triable issues remain regarding whether B2B's employee, Mr. Holmes, signed the agreements as an apparent agent of B2B. *See* **[DE 65, pp. 6-7 at ¶ ¶ 7, 9]** (noting that Holmes was given a B2B email address and access to B2B forms and documents); *Roessler v. Novak*, 858 So. 2d 1158, 1161 (Fla. 2d DCA 2003)[23] (expounding doctrine of apparent agency and

---

    [21] COTC's attempt to invoke the "carrier claim" clause contained in the FICA Brokerage Contract entered into between FedEx and FICA is unavailing, as COTC is not a party to that contract and may not enforce its provisions.

    [22] *See* Section II, *supra* (noting that Broker-Carrier Agreement was signed by Mr. Holmes on behalf of "B2B/COTC" and "B2B/Central Oregon Truck").

    [23] Both B2B and FedEx cited Florida law when briefing these issues. **[DE 50, p. 6]**; **[DE 65, p. 9]**. I therefore presume its applicability. *Manhattan Bank v. Rood*, 698 F.2d 435, 436 n.1 (11th Cir. 1983).

noting that "a principal should be estopped to deny the authority of an agent when the principal permitted an appearance of authority in the agent and, in so doing, justified a third party's reliance upon that appearance of authority as if it were actually conferred upon the agent"); *Sears Roebuck & Co. v. Williams*, 877 So. 2d 5, 6 (Fla. 3d DCA 2004) (reversing grant of summary judgment where record supported "different inferences . . . as to an agency relationship" and noting that "question of agency and/or apparent agency is generally a question of fact which must be determined by a [fact-finder]") (citing *Robbins v. Hess*, 659 So. 2d 424, 427 (Fla. 1st DCA 1995)).[24]

For these same reasons, FedEx's Cross-Motion for Summary Judgment on its Cross-Claims **[DE 65]** must also be denied.  As FedEx correctly acknowledged in its memorandum of law, its Cross-Motion cannot be granted unless the Court "finds that Holmes had apparent authority to enter into the contract[s]." **[DE 65, p. 18]**.  Because triable issues remain regarding Mr. Holmes' apparent authority, FedEx's Cross-Motion cannot be granted.

F.    *COTC's Motion for Summary Judgment on FedEx's Cross-Claims and FedEx's Cross-Motion for Summary Judgment*

The last motions I must address are the cross-motions filed by COTC and FedEx with respect to FedEx's cross-claims against COTC.  COTC claims it is entitled to summary judgment because B2B's employee, Mr. Holmes, was not authorized to execute the

---

[24] I summarily reject B2B's impossibility-of-performance argument.  The fact that B2B was licensed only as a broker at the time the agreements were executed does not render its performance impossible under Florida contract law.  *Am. Aviation, Inc. v. Aero-Flight Serv., Inc.*, 712 So. 2d 809, 810 (Fla. 4th DCA 1998) (expounding impossibility of performance under Florida law).

January 2007 Broker-Carrier Agreement or the B2B Brokerage Contract that lists both COTC and B2B as a carrier. *See* **[DE 63]**. Like B2B, COTC's motion fails to account for the doctrine of apparent authority. That is, even if Mr. Holmes did not have *actual authority* to execute documents on behalf of COTC, the record evidence demonstrates genuine issues of material fact as to whether Mr. Holmes acted as an *apparent agent* of COTC when he signed the two documents at issue. For example, around the time the Broker-Carrier Agreement was signed, Holmes presented FedEx with COTC's Certificate of Liability insurance, *after* having received permission from COTC to do so. **[DE 49-1, p. 38]; [DE 119-1, p. 8]; [DE 66-1]**. Moreover, approximately a week before the Broker-Carrier Agreement was executed, COTC's Interstate Commerce Commission Permit and "Carrier Profile" – which lists ehomes@b2btranserv.com as COTC's e-mail address – were faxed to FedEx from the same B2B fax machine Mr. Thomas used to send FedEx a copy of the Broker-Carrier Agreement he executed on behalf of "B2B/COTC." **[DE 66-4]; [DE 66-5]; [DE 119-1, p. 8]**. Finally, it cannot be overlooked that – in addition to signing the Broker-Carrier agreement on behalf of "B2B/COTC" – Mr. Holmes signed numerous load rate confirmations on behalf of COTC throughout 2008. **[DE 66-6]; [DE 119-1, p. 18]**.[25] Viewing this evidence in the light most favorable to Defendant FedEx, I conclude that there is a genuine issue of material fact regarding whether COTC "permitted an appearance of authority in [Mr. Holmes] and, in so doing, justified [FedEx's] reliance upon that appearance

---

[25] I note that COTC has failed to present any evidence indicating that it took any action to prevent or correct Mr. Holmes' allegedly unauthorized behavior.

of authority as if it were actually conferred." *Roessler*, 858 So. 2d at 1161.[26] Because this factual issue must be resolved by the trier of fact, both motions for summary judgment on FedEx's cross-claims against COTC must be denied.[27]

## V.   Conclusion

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that:

1.   Plaintiff's Motion for Partial Summary Judgment **[DE 69]** is GRANTED IN PART AND DENIED AND PART.

2.   FedEx's Cross-Motion for Summary Judgment as to Plaintiff's Claims **[DE 78]** is GRANTED IN PART AND DENIED IN PART.

   a.   Plaintiff's negligence claim against FedEx is DISMISSED WITH PREJUDICE.

3.   B2B's Cross-Motion for Summary Judgment as to Plaintiff's Claims **[DE 48]** is GRANTED IN PART AND DENIED IN PART.

---

[26]  FedEx treats the apparent agency issue as one of Florida law, while COTC argues for the application of Oregon agency law.  *Compare* **[DE 77, pp. 9-18]** *with* **[DE 100, p. 11]**.  Because the pertinent principles of apparent agency in the two states are "substantially similar," I need not reach the conflicts question.  *Checkley v. Boyd,* 107 P.3d 651, 665-66 (Or. App. 2005); *Cooper v. Meridian Yachts, Ltd.,* 575 F.3d 1151, 1171 (11th Cir. 2009) (noting that "when the laws of the competing states are substantially similar," district courts should "avoid the conflicts question").

[27]  I summarily reject COTC's attempt to invoke the Broker-Carrier Agreement's forum selection clause, *see* **[DE 99, pp. 3]**, as this argument has been waived. *Lipofsky v. N.Y. Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988) ("Lack of personal jurisdiction and improper venue, unlike lack of subject matter jurisdiction which requires dismissal on the court's own motion if not raised by the parties, are waivable defects.").   I also reject COTC's attempt to rely on the "carrier claim" clause contained in the FICA Brokerage Contract.  *See* Note 15, *supra*.

a.      Plaintiff's bailment claim against B2B is DISMISSED WITH PREJUDICE.

b.      Plaintiff's breach of contract claim against B2B is DISMISSED WITH PREJUDICE.

4.      COTC's Cross-Motion for Summary Judgment as to Plaintiff's Claims **[DE 64]** is DENIED.

5.      B2B's Motion for Summary Judgment as to FedEx's Cross-Claims Against B2B **[DE 50]** is DENIED.

6.      FedEx's Cross-Motion for Summary Judgment as to its Cross-Claims Against B2B **[DE 65]** is DENIED.

7.      COTC's Motion for Summary Judgment as to FedEx's Cross-Claims Against COTC **[DE 63]** is DENIED.

8.      FedEx's Cross-Motion for Summary Judgment as to its Cross-Claims Against COTC **[DE 77]** is DENIED.

9.      An Amended Scheduling Order will issue shortly.

DONE and ORDERED IN CHAMBERS at Miami, Florida this 7th day of July, 2010.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge McAliley
Counsel of record